**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | | |
|---|---|---|
| BRYAN M. DAVIS,<br><br>*Plaintiff*,<br><br>v.<br><br>SOUTHERN HEALTH PARTNERS, KIM FORD, and DR. MATTHEWS,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-60<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Michael J. Dumitru |

---

**MEMORANDUM AND ORDER**

---

Plaintiff Bryan M. Davis, a prisoner currently detained in the Bedford County Jail, has filed a complaint under 42 U.S.C. § 1983 [Doc. 1] and a motion for leave to proceed *in forma pauperis* [Doc. 4]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion for leave to proceed *in forma pauperis* and will **DISMISS** the complaint for failure to state a claim.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 4] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*Id.*] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee, 37402 as an initial partial payment, whichever is the greater of: (a) twenty percent of the average monthly deposits to Plaintiff's

inmate trust account; or (b) twenty percent of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars, until the full filing fee of three hundred and fifty dollars has been paid to the Clerk. 28 U.S.C. §§ 1914(a), 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with payment of the filing fee.

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim against any Defendant, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

**B. Plaintiff's Allegations**

Plaintiff was booked into the Bedford County Jail on May 1, 2026 [Doc. 1 p. 12]. On May 19, 2026, Plaintiff broke his finger while playing basketball with other inmates [*Id.*]. Plaintiff pushed a button to summon guards, and when the two responding guards saw Plaintiff's finger was broken, they took him to see Nurse Kim, a nurse employed by third-party contractor Southern Health Partners [*Id.*]. Nurse Kim used a popsicle stick to splint Plaintiff's finger and gave him ibuprofen for the pain, but the medicine "didn't help" [*Id.*]. Nurse Kim stated that an x-ray would be performed later that day, but Plaintiff did not receive an x-ray until the following day [*Id.*]. Plaintiff was also placed on lockdown because he was hurt [*Id.*].

On May 26, 2026, Plaintiff saw Dr. Matthews, who told Plaintiff he could attempt to "break" Plaintiff's finger "back in place" but was unsure if he could [*Id.*]. Plaintiff did not receive any medication for his finger, so he was in pain [*Id.*]. It was also hard for Plaintiff to take a shower, but Ronnie Prince refused Plaintiff's request for additional shower time [*Id.*].

On June 8, 2026, Plaintiff put in a sick call request, and he was charged $5 for the medical visit and $5 for ibuprofen [*Id.*]. On June 12, 2026, Plaintiff was taken to a doctor in Nashville, who x-rayed Plaintiff's hand and told Plaintiff "he could break it back in place" because it had only been two days since Plaintiff's accident [*Id.*]. When Plaintiff told the Nashville doctor that the break had occurred twenty-four days prior, the doctor told Plaintiff "sorry and left [his] finger alone" [*Id.*]. The doctor stated that it had "been to[o] long for him to break it back and [Plaintiff] would have to have surgery" [*Id.* at 13].

Plaintiff went back to the doctor in Nashville for surgery on June 22, 2026 [*Id.*]. Afterward, the jail and medical staff gave Plaintiff his doctor-prescribed medication twice a day for three days, but Plaintiff "was still hurting" [*Id.*]. So, he put in a sick call on June 23, 2026 [*Id.*]. Plaintiff was taken back to the Nashville doctor on June 29, 2026, for a follow up [*Id.*]. But Plaintiff was not provided any additional medication and remained in pain [*Id.*]. Plaintiff put in additional sick calls on July 8, July 13, and August 3, 2026, but "they did nothing" [*Id.*]. Plaintiff returned to the Nashville doctor on August 10, 2026, to have the pin removed from his hand, and the doctor told Plaintiff he would have therapy [*Id.*]. "But they never gave [him] any" [*Id.*].

Plaintiff can move his finger some now, but he "will have to deal with it the rest of [his] life" [*Id.* at 13]. He filed this action against (1) Nurse Kim Ford and Dr. Matthews in their respective individual and official capacities and (2) Southern Health Partners, seeking $1,000,000 in damages [*Id.* at 2, 5].

### C. Analysis

The Eighth Amendment's "cruel and unusual punishments" clause, applicable to the States through the Fourteenth Amendment, *see Robinson v. California*, 370 U.S. 660, 666–67 (1962), requires the government "to provide medical care for those whom it is punishing by

incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). But it does not require correctional facilities to provide prisoners with "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Instead, it proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Though it is unclear, it appears that Plaintiff was a pretrial detainee, as opposed to a convicted prisoner, at the time of the incident giving rise to this suit. However, under either custodial designation, it is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" that violates the inmate's constitutional rights. *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)); *see also Poynter by and through Fernandez v. Shirley*, --- F.4th ---, 2026 WL 2641092, at *6–7 (6th Cir. Sept. 8, 2026) (applying the "subjective-knowledge requirement" set forth in *Farmer* to pretrial detainee claims). Such a claim is comprised of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). The subjective component is met when officials know "of the facts that show the serious medical need" and they "personally conclude that this need exists." *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021).

Under the deliberate-indifference standard, officials do not act with deliberate indifference when they reasonably respond to a serious medical need after they learn of it, even if the harm is not ultimately averted. *Farmer*, 511 U.S. at 844. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in

> diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

*Estelle*, 429 U.S. at 105–06 (quotations omitted). Accordingly, a prisoner cannot state a claim of deliberate indifference by suggesting that he was misdiagnosed or not treated in a manner he desired. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (finding provider possibly negligent but not deliberately indifferent when unaware of prisoner's serious heart condition); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "misdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105–06.

Plaintiff's claim for the delay and/or denial of medical care fails to satisfy this demanding standard. First, numerous courts have routinely found that a broken finger is not, without more, a serious medical need. *See, e.g., Williams v. Alana*, No. 2:23-cv-142, 2023 WL 6427231, at *6 (W.D. Mich. Oct. 3, 2023) (finding it "not at all clear" that Plaintiff's broken ring finger, which caused "extreme pain" satisfied "the objective component of the relevant two-prong test"); *Rutherford v. Ward*, No. 4:22-CV-0199, 2023 WL 11971246, at *5 (N.D. Ga. Mar. 14, 2023) (collecting cases finding a broken finger does not pose a serious risk of harm); *Green v. Corr. Corp. of Am.*, No. 1:12-CV-2293, 2013 WL 1567465, at *2 (W.D. La. Feb. 11, 2013) ("Numerous cases have found that a broken finger does not rise to the level of a *serious medical need* for purposes of a constitutional analysis."); *Paterson v. Goord*, No. 9:06-CV-0211, 2008 WL 623123, at *8 (N.D.N.Y. Mar. 4, 2008) (noting "each of the four New York State district courts in this Circuit have specifically held, as a matter of law, that a broken finger alone does not constitute a serious medical need").

But even assuming Plaintiff could satisfy the objective prong of the deliberate-indifference test, the subjective component is lacking. That is, Plaintiff has not alleged facts plausibly suggesting that Defendants were deliberately indifferent to his needs. To recap, Plaintiff's complaint alleges that immediately after his finger was broken, Defendant Nurse Kim splinted his finger, provided him with pain medication, and secured an x-ray for Plaintiff's finger the following day. Therefore, Plaintiff has not demonstrated that Defendant Nurse Kim acted with deliberate disregard to his medical needs.

Plaintiff was evaluated by Dr. Matthews six days later. To the extent Plaintiff's complaint may be construed to allege that this delay caused constitutional injury, the Court notes that Plaintiff does not allege that Dr. Matthews knew of Plaintiff's injury but deliberately declined to see him sooner. Nor does Plaintiff allege that he suffered constitutional injury because some policy or custom of Southern Health Partners prevented him from being evaluated earlier. *See Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding a private corporation may not be held liable under § 1983 unless plaintiff alleges "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights). Therefore, Plaintiff has not alleged facts from which the Court could plausibly infer that any delay in the medical care he received was due to deliberate indifference.

The subsequent allegations of the complaint do not move the needle for Plaintiff, either. Plaintiff presumably declined Dr. Matthews' offer to attempt to "break" Plaintiff's finger "back in place," but it is apparent that the medical staff did not then simply ignore Plaintiff's condition, but rather, began the process of securing Plaintiff an appointment with an outside physician. In the meantime, Plaintiff received ibuprofen again when he made a sick call request.[1] When

[1] Plaintiff's complaint that he was charged a medical co-pay for a medical visit and medication likewise fails to implicate a constitutional right, because there is no constitutional prohibition

Plaintiff did see an outside physician in Nashville a few days later, he was scheduled for and received surgery. Upon Plaintiff's return to the jail, he was provided with his prescribed medication, and jail personnel took him to his follow-up visits with the Nashville physician. And while Plaintiff complains in a conclusory fashion that he was never provided with therapy, he does not allege any facts that would permit the inference that Defendants knew that Plaintiff's Nashville physician prescribed therapy but deliberately chose to ignore that recommendation.

In sum, Plaintiff has failed to plausibly allege that he had a serious medical need that any named Defendant met with deliberate indifference. His complaint will be dismissed. !

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 4] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff has failed to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good
faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

---

against a policy requiring payment for medical expenses. *See Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3rd Cir. 1997) (holding deliberate indifference standard does not guarantee prisoners the right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society); *Bailey v. Carter*, 15 F. App'x 245, 250–51 (6th Cir. 2001) (holding policy requirement of payment for medical services, where funds are available, does not violate an inmate's constitutional rights); *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation).

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**/s/ *Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**